# SUPREME COURT OF TEXAS.

## GALVESTON TERM, 1863.

### JAMES BOHANAN AND WIFE V. HENRY HANS.

The grantee of a league of land executed to L. L. V. a bond for title to one half of the league on the 7th day of June, 1831. The administrator of L. L. V., on the 6th day of January, 1833, sold the bond for title under an order of the alcalde of the jurisdiction of Washington, and D. A. became the purchaser at public sale. D. A. petitioned the judge of the first instance of the jurisdiction of Austin, for the appointment of a curator of the grantee, and for a decree that the curator execute to him a deed for the half league. On the 11th Sept., 1835, the judge decreed that the curator execute to him a deed, which was done accordingly: *Held*, that the decree of the judge of the first instance was a valid judgment, divesting the original grantee of the title and vesting it in D. A., and that it concluded all inquiry into the legality of the original contract between the grantee and L. L. V., and into the legality of the administrator's sale.

The case of Mills v. Alexander, 21 Tex. R., 154, cited and approved.

A party objecting to evidence ought to state his objection clearly and specifically, so that it may be understood by the court, and obviated by the opposing party if it be capable of being removed by the production of other evidence. It is too late to urge such objections in this court unless they are clearly and specifically made in the court below.

Where objections to evidence are made, not to its competency, but only to the manner of its introduction, or the mode of proof of the part proposed to be proved, they must be taken when it is produced upon the trial, or they will be deemed to have been waived. It is too late to raise such objections by asking instructions of the court after the evidence has gone to the jury.

Error in the rulings of the court below upon immaterial questions, in no wise affecting the merits of the case, is not a good cause of reversal. It is not the practice of the court to reverse a judgment merely for the purpose of correcting the errors of the court below upon abstract and immaterial questions, which can have no proper influence in the final decision of the case.

APPEAL from Washington.   Tried below before the Hon. R. E. B. Baylor.

Action of trespass to try title to a portion of a league of land in Washington county, brought by appellants, James Bohanan and Lea A. Bohanan, his wife, against the appellee, Henry Hans. Lea A. Bohanan claimed title to the land by virtue of a grant to her first husband, Samuel Hinch, since deceased, and by a deed of gift from Chas. G. Hinch.   The defendant pleaded general denial, not guilty, three, five, ten and fifteen years limitation, stale demand, and set up title in himself.

On the trial, an agreed statement of facts was submitted, subject to certain exceptions and objections.   It was admitted that a full and perfect title to a league of land was extended to Samuel Hinch on the 31st day of March, 1831, and that his title included the land in controversy.   It was in proof that Lea A. was married to Samuel Hinch in 1828 or 1829, and that he died four years thereafter; that Charles G. Hinch was the only issue of Samuel and Lea A. Hinch; Charles made a deed of gift of his interest in the league to his mother on the 5th day of March, 1852; Charles died soon thereafter.   Defendants read in evidence a bond for title executed by Samuel Hinch to Lewis L. Veeder on the 7th day June, 1831, for one half of the league of land.   It was agreed that a transcript of the proceedings had in the succession of L. L. Veeder, deceased, from Austin county, so far as the same could be done without legal objection, should be made a part of the case. From this transcript, it appears that the administrator of the estate of Lewis L. Veeder applied to the alcalde of the jurisdiction of Washington for the sale of the movable and immovable property of his intestate; decree was rendered, and sale made on the 6th of January, 1833; among other things, the bond for title from Samuel Hinch to Lewis L. Veeder was sold at public auction, and

David Ayres became the purchaser. It was further agreed, that a certified copy, taken from the record of Washington county, of the petition of David Ayres, and of the proceedings thereon, so far as the same was admissible under the issues, be made a part of the case agreed upon. From which copy, it appears that David Ayres, on the 15th day of September, 1837, petitioned George Ewing, judge of the first instance of the jurisdiction of Austin, representing that Samuel Hinch, formerly a resident of the jurisdiction of Austin, had removed therefrom, and was a non-resident, setting out the execution and contents of the bond from Samuel Hinch to Lewis L. Veeder, the death of Veeder, the appointment of an administrator, the sale of the bond under a decree of the alcalde of the jurisdiction of Washington, and prayed that a curator *ad hoc et ad litem* of Samuel Hinch be appointed, and for a decree that the curator execute a deed to the petitioner for the half of the league as specified in the bond. A curator was appointed. The judge of the first instance of the jurisdiction of Austin, on the 11th day of September, 1835, decreed that the curator execute a deed as prayed for, which was accordingly done. It was further agreed, that defendant claimed 1480 acres of the one-half of the Hinch league sued for, by a chain of perfect title on its face, and other mesne conveyances down to the defendant. Other conveyances and evidence in support of the plea of limitation were introduced, but not noticed in the opinion of the court.

The plaintiff objected to the reading of the translated copy of the title bond from Hinch to Veeder, because it was illegal and void, because it purported to be for one-half of a league of land, the title to which was extended at a different time from that stated in the bond. The objections were overruled, and plaintiff excepted. The plaintiff objected to the reading of the transcript from Washington county, upon the ground that it showed the sale of a mere equity, and said sale of Hinch's bond to Veeder could confer no title to the purchaser. The objection was overruled, and plaintiff excepted. The plaintiffs objected to the reading of the copy of the record of Washington County Court, purporting to be a copy of a deed from A. W. Ewing, curator, to David Ayres, made in

pursuance of the decree of the judge of the first instance of the jurisdiction of Austin:—

1. That the same upon its face, when all taken together, is absolutely void.

2. That the court rendering the judgment on which said curator was ordered to make said deed, had no legal jurisdiction. The judgment rendered in said cause was void.

3. That said transcript not being a record of the proceedings of any court of record, nor the predicate having been laid for the introduction of said copy, further than is stated in the case agreed on.

Objections overruled, and plaintiffs excepted.

Among other instructions asked by the plaintiffs were the following:

4. That a copy of the deed from Ewing, curator of Hinch, from the County Court of Washington county, is not evidence of any judgment mentioned in it. As there was no other evidence of any such judgment offered, no such judgment can be taken to exist.

5. If such judgment does exist, the same could not be received in evidence in support of defendant's claim to the land, unless said judgment was recorded in the county where the land lies.

Which were refused by the court. The court refused to give instructions on other points in issue asked by the plaintiffs, and gave instructions asked by the defendant on other points. Verdict and judgment for defendant. Appeal by plaintiffs below.

*James E. Shepherd*, for plaintiffs in error. It is insisted for appellants, 1st. That the agreed case shows a good title in them. 2d. That the bond from Hinch to Veeder, dated in 1831, was against law and void. (Hunt's heirs v. Robinson's heirs, 1 Tex. R., 748.) 3d. The sale of the bond by the administrator of Veeder was illegal, and conveyed no title to the purchaser, Ayres. 4. The deed from Ewing, curator of Hinch, to Ayres, reciting a decree of the judge of the first instance, was no evidence of the existence of such a decree. (Jones v. Taylor, 7 Tex. R., 240.)

*J. D. & D. C. Giddings*, for defendant in error. The second error assigned is, that the court erred in permitting defendant to read the transcript from the County Court of Austin county. The grounds of objection, as appears from the bill of exceptions, are, we think, answered by the agreement of parties in relation to the introduction of the transcript.

The first objection raised by the bill of exceptions is, that it is a "nullity"—rather a strong expression; but how it thus appears, we are not informed. It is the transcript of the records of a court having jurisdiction of the subject-matter, and its judgments are final and conclusive, and cannot be inquired into in a collateral proceeding. Had this court jurisdiction of the subject-matter in litigation before it? If it had, then its judgment is final and conclusive. That the alcalde's court had jurisdiction of all matters pertaining to successions and vacant estates, I presume, will not be denied.

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;

The case of Mills v. Alexander is believed to be conclusive of this case. That case settles the question of the validity of the judgment against the curator, as well as the other questions arising in the case. (21 Tex. R., 154.)

WHEELER, C. J. The important question to be considered is, whether the defendant has shown a good title to the land in controversy. For if he has a good title as against the plaintiffs, that will supersede the necessity of considering the other controverted questions; they will become immaterial.

Under the authority of Mills v. Alexander, (21 Tex. R., 154,) it must, we think, be held that the decree of the 11th of September, 1835, of the judge of the first instance of the jurisdiction of Austin, was a valid judgment divesting the original grantee of the title and vesting it in Ayres; and that it concludes all inquiry into the legality of the original contract between Hinch and Veeder, and into the legality of the sale to Ayres by Veeder's administrator. The case is in point, and meets and disposes of

29

every objection urged against the title under the decree. (Ib. 162, and authorities cited.) It is unnecessary to re-examine the questions there decided. The decree, if legally established by competent evidence, conclusively determines the question of title.

It is insisted that the decree was not produced, nor any evidence of its existence, and consequently that the deed of the curator made in pursuance of it is no evidence of title. There is, however, in the record what purports to be a certified copy from the records of Washington county of the petition and decree. It appears to have been recorded on the certificate of the judge, who, at the time the copy was given, the 22d of September, 1835, was the keeper of the original. It is not necessary to decide whether it was properly recorded or not; it was not objected to on that ground; nor on the ground that it was not a true copy. The objections to its admission in evidence, as disclosed by the bills of exceptions, do not question its authenticity or verity, as a copy of an existing original, but only its legal effect. On the contrary, the second objection tacitly admits the existence of the judgment, denying the jurisdiction of the court that rendered it. It is said that no predicate was laid for the admission of the "said transcript;" but what was meant by this objection, does not appear. A party objecting to evidence ought to state his objection clearly and specifically, so that it may be understood by the court, and met and obviated by the opposing party, if it be capable of being removed by the production of other evidence. The objection is too indefinite. The copy in question of the petition and decree was made a part of the agreed case, so far as it was "admissible under the issues," from which it would seem that it was not intended to question the authenticity of the copy, or the manner of proving the record, but only the legal effect of the proof. And that was the question raised by the bill of exceptions, and not whether the copy was admissible as such. The objection to the evidence now urged, was sought to be raised by the fourth instruction asked by the plaintiffs; but it was then too late, and the instruction was rightly refused because it was too late to obviate the objection by the production of other evidence which it might have been in the power of the party to produce, if the objection had been made at the

proper time.   If the defendant had failed to produce any evidence of the decree it might have been different.   There would have been a failure to prove a fact essential to the title, and the objection would have been fatal however or whenever raised.   But where objections to evidence are not to its competency, but only to the manner of its introduction, or the mode of proof of the fact proposed to be proved, they must be taken when it is produced upon the trial, or they will be deemed to have been waived.   If the copy in question had been objected to on the ground that it was the copy of a copy, or that it was not duly authenticated, or did not come from the proper custodian of the original, or that it had not been filed and due notice given, or any other like ground, the defendant might have instantly obviated the objection by producing the original, or other competent evidence to which the objection did not apply.   But to permit the plaintiffs to reserve an objection of the character of that now insisted on until the evidence was closed, and then raise it by an instruction to the jury, when it was too late to produce other and better evidence, would operate a manifest surprise and injustice upon the party producing the evidence. The objection came too late, and the court did not err in refusing to entertain it.   Since, therefore, no objection was taken at the proper time to the mode of proof of the decree in question, it must be taken to have been legally established; and, as we have seen, its effect was to vest the title of the grantee, Hinch, in Ayres, whose title it is not questioned the defendant has.

The defendant having shown a valid legal title to the land in question, was under no necessity to invoke the aid of the statute of limitations, or the supposed acts of recognition or confirmation of his title, or any supposed equities arising out of the facts of his case; and the rulings of the court upon those questions become wholly immaterial.   There may be error in those rulings; but they are upon immaterial questions in no way affecting the merits of the case.   The jury could not legally have returned a different verdict; and it is not the practice of the court to reverse a judgment merely for the purpose of correcting the errors of the court below upon abstract and immaterial questions, which can have no proper influence in the final decision of the case.

We are of opinion that there is no error in the judgment, and it is affirmed.

Judgment affirmed.

Bell, J., did not sit in this case.